318-07133 Marriage of Tolan Pica, Appellant Jenny Portis Boswell and Madonna Pica Appellee by Megan Fox. Thank you, Ms. Boswell. Good afternoon. Thank you. May it please the court and the opposing counsel, my name is Jenny Boswell and I am the attorney for the appellant Tolan Pica. I'd like to spend my time today answering any questions that the panel has and not necessarily repeating information that's already in the extensive briefing, but to highlight for the court just some of the key issues parsing through some of the red herrings or maybe tangential issues that may seek to muddy the waters of this case. So just as a brief overview for the panel, this case is an appeal from the trial court's decision to deny my client's petition to modify spousal support. Now, the parties were married for 20 years. They lived in Washington, D.C., northern Virginia area and were divorced in Virginia. So we have Virginia case law that's at issue here. The parties, when they were divorcing, they entered into a marital settlement agreement where the parties agreed on spousal support of approximately $33,000 a year, $33,600 a year that my client would pay to LaDonna. They were living in northern Virginia at the time. After the divorce, after the marital settlement agreement, LaDonna moved to Galesburg, Illinois. The parties both agreed to domesticate the divorce proceedings in Knox County, which is why the trial court proceedings took place in Knox County. Now, since that time, since LaDonna moved to Galesburg, a few other things have changed. As it stands right now, LaDonna is a 51-year-old woman. She's able-bodied, healthy. She doesn't work. She frankly doesn't have to work because right now she's receiving $53,000 annually with the combined $33,000 of spousal maintenance plus now this new stream of income, roughly $21,000 that she receives annually from tolling my she's entitled to that. That was all under the marital settlement agreement. But it's a new stream of income that wasn't happening. She wasn't receiving that at the time that the spousal support was agreed upon. So she now receives that $53,000 a year in maintenance and now the pension of our argument is that she has a new substantial stream of income. That $21,000 comes close to doubling what she was receiving. She went from $33,000 to $54,000 a year. So at the trial court level, at the hearing, when my client petitioned to modify the spousal support, it was established that LaDonna easily meets all of her household needs and expenses. She has no debt. She has assets and savings of approximately $360,000 that she's not had to dip into. She does not have to pay for health insurance. She never will have to. She gets that through the military benefits as well. And she has no minor children in the home. She uses the spousal support money, that $33,000 a year, to live on and it's sufficient to meet her work. She doesn't, hasn't, she's chosen not to work and she doesn't need to maintain her standard of living. So the change, again, has come once she started receiving this additional $21,000 a year in the pension payment that nearly doubles her income. So she, she's now living in a, you know, much lower cost of living area and receiving a significant more, a significant amount more than the parties initially anticipated that she would be bringing in. So under Virginia law, you have to, my client has to prove, show two things. The first thing is that there is a material change in the circumstances. The case law that we've cited is, daily is very clear on this fact that a material change in circumstances would be the receipt of this pension income. It's a case that is very analogous in both fact and they very clearly say that yes, you have to show that there's a material change, which the case law supports. And I just think common sense, you know, that just supports that, of course, that's a material change that she's receiving this large chunk of money. But beyond that, you can't just have a material change. And I would say also there have been several other material changes, but you only need one and I do think that that's the most important one to focus on. I think her moving to a lower cost of living area would be another one. She has no minor children living at home, that could be another one. But not, just having a material change is not sufficient. We also have, it has to be a material change that warrants a modification. So I think that the, it is also clear about that argument just a little bit. Sure. Because you invited questions. Yes, please. If she had moved to an area that was more expensive than the Washington, D.C. area, would she have then been able to come in, claim a material change in circumstances and request that her maintenance be increased? I think she could. I think that if... Is there any case law? I don't know because I was obviously looking at the other side of that. I think that moving and expenses changing, valid expenses changing, would be a material change. But again, I think that there's a lot in the briefing about, or not, there's a lot in there about her moving to Galesburg and whether or not the parties knew that at the time that they negotiated the initial spousal support. I think that that's kind of a red herring issue. I think that the pension income is the material change that actually matters. I think it's important. It was contemplated for the divorce settlement that that would be divided and she would be receiving that. Yes, the pension income would be coming at a normal retirement age. And then at that time, let's say it was in 20 years from now, not just right after they got divorced, he would have likely asked for his spousal support to be modified at that time as well. I think the timing of it doesn't really matter. It was okay, we've got the spousal support because she needed it. But then the pension income, once that comes into play, the spousal support level, it will change and that's what Daley held very clearly. Was he entitled to full benefits at the time of his retirement? Was he entitled to full retirement age under the military standards? Yes. I don't read anywhere in any of this that it was contemplated that he would work a certain number of years or anything. Correct. And we're not saying that. We're not saying that she's not entitled to that pension income or that because she should be going back to the first point, he said that this is a substantial circumstances that wasn't contemplated. But you don't contemplate, I mean, he's eligible for retirement and he took it, knowing that at the time he retired, there are some decrees that say, you know, if he does this to retire, throw a retirement age normal number of years. But obviously, he met all of that criteria in terms of receiving full pension benefits. Yes. In the trial court, there was specific testimony and findings that neither party contemplated that he would be retiring anytime soon. Neither party were expecting him to retire. It was an unexpected event that was not contemplated. It was not contemplated by the parties that he would be retiring anytime in the near future. They assumed he would be career military for a long time. But I don't think that it matters the timing of it doesn't matter because whenever it happened, whether that was going to be two years after they got divorced or 20 years after they got divorced, whenever he retired and she started getting that pension payment, he would be entitled to come in and ask for a modification because just receiving that additional money is a material change under daily. And then the second change is that she's now getting $21,000 extra a year. The reason for the second problem, the reason that that warrants a change in the modification of the spousal support is because of the windfall that it creates in this particular situation. So we have spousal support that's designed to be need-based. Now, Virginia law does not say need-based as in just this little penance to keep you alive. No, it is the lifestyle to which you are accustomed and are used to in your married life. So we're not saying that she needs to be living some pauper lifestyle, but it is need-based to keep her in a certain case. So she moved to Galesburg. She is renting a house. She has been able to easily meet her expenses. She's not going into debt, nothing like that. She hasn't had to dip into her assets, her savings or assets, but it's going way beyond that. In the trial court level, the testimony was that she is meeting all her needs and still has $1,500 left over every single month. Now, the pension payment is $1,800. So she is using her spousal support and she's just simply saving the rest of it. And that's not a criticism to save, but spousal support is not designed for the payee spouse to be able to save excessively or spend. But they had quite a bit of assets to divide when they were divorced, so they must have saved during their marriage. Yes, she received the pension, or I'm sorry, not the pension, she had investment income. So that means as a married couple, they must have been good savers. And they were, I think that they lived a more than enough. All of the testimony in the trial court was that she more than meets her needs and she simply just saves all of the rest of it. And what I would submit to the court, that that is not something that we want to set a precedence of a payor spouse paying, that we need to modify the support. She's entitled to not stocking away $16,000 a year that she's just not spending. She has more than enough to meet her needs very comfortably. She's got savings that she hasn't had to touch, and she's not working. She is of age and ability to get, even if it's just a minimum wage job, and she doesn't have to. Now, she didn't work during the marriage. So we're not, my position here today is not that I want to punish LaDonna and have her have to go out and get a job. My point is she doesn't even need to. She can live very comfortably without working, but she does not need the additional $16,000 every single year that's coming in. We've now, the pension, his retirement and the pension income has created a windfall for her that the trial court, it was just plain error to not acknowledge the additional income being a change in circumstances that is now creating a windfall. In the marital settlement agreement, they agreed that there would only be three circumstances under which she would lose the spousal support. That would be cohabitation, remarriage and death. They didn't make any provision for this kind of circumstance in the marital settlement agreement, did they? That it would be completely terminated. I would need to pull the exact language, but I believe that it mirrors the language of the Virginia statute that says And I can definitely pull that at council table and on my rebuttal. I know that yes, you're correct about the death and cohabitation or remarriage, but then it's fully modifiable. I know that that language was in the marital settlement agreement. Yes, it was. Yeah. And so I would just again submit to the court that we, under daily, we've clearly met that there is the material change. And then under the second prong, that that material change does warrant the downward modification because of the true windfall that she is receiving by getting that spousal support that meets her needs, fully meets her needs, and then the $21,000 of pension income that she is doesn't. She is at home with no minor children. She doesn't pay health insurance. She never will have to. No debt. And she's living in Galesburg, Illinois, making $53,000 a year or bringing in $53,000 a year without even working. And I just would submit to the court that that is a windfall that was plain error for the trial court not to acknowledge and not downward modify the support obligation. And your client's income has about doubled? Yes. His income is, we're not claiming that he's unable to make the spousal support payment, correct? And he's making about $200,000. Under $194,000. Correct. Yes. Yes. Correct. If there are no other questions, I will conclude the floor. Thank you. Ms. Box. Good afternoon. Good afternoon, Your Honors. My name is Megan Box, and I represent LaDonna Pica, who is the I think the brief also discusses LaDonna's move to Illinois, and then that these alleged material changes warrant a reduction in the support. That's his position. It's LaDonna's position that this Court should affirm the decision of the trial court denying Toland's petition to modify his spousal maintenance obligation, because under Virginia case law, the moving party in a petition for modification of support is required to prove both material change in circumstances and that this change warrants a modification of support, which is in most of the Virginia cases that are cited in the briefs, including the Daly case that opposing counsel cited. And the problem with opposing counsel's argument is that a modification of spousal support under Virginia case law is warranted, only warranted by a change in circumstances of the parties, and the change bears upon either the financial needs of the dependent spouse or the ability of supporting spouse to pay maintenance. And that's in the Driscoll v. Hunter case that I've cited in my brief. And under that case, the crucial question is the ability of the supporting spouse to pay. Where a moving party fails to show a material change that warrants modification, the Court is not required to consider voluntary unemployment of a non-moving party or any of the other factors under the Virginia Code Section 20-107.1e, and that includes income streams from other sources like pension plans. The – I guess I'd start by saying that the Court did not abuse its indiscretion for this reason. The Court did not abuse its discretion in finding that Toland's retirement and his near doubling of his income after the retirement was not a material change of circumstances that warranted a downward modification. Two, the Court did not abuse its discretion in finding that LaDonna's move from Washington, D.C. area – it was Virginia, but it was in the Washington, D.C. area – to Galesburg, Illinois was not a material change in circumstances that warranted a downward modification. And three, that the Court did not abuse its discretion in rejecting Toland's windfall argument and his request to impute income to LaDonna because the trial court was not required under Virginia law to consider these matters because Toland didn't – didn't overcome the first part and prove a material change in circumstance that warrants modification. And I will stand on my brief with regard to any points not orally argued today. She touched on some of the important facts here. So I'm just going to note a couple other things. The mural settlement agreement that was referenced by opposing counsel was entered by the parties in December of 2014 prior to the divorce decree. And under that mural settlement agreement, Toland agreed to pay LaDonna the amount of the $2,800 per month for spousal support. It did not require in any way condition LaDonna's continued receipt of spousal support from Toland on her obtaining or retaining full-time or part-time employment, and the mural settlement agreement was silent as to what effect, if any, Toland's future retirement would have on any modification proceedings. The party's final divorce decree was entered in – let me back up a second. At the May 31st hearing, Toland admitted that the temporary spousal support that he received was reduced down to the $2,800 in the mural settlement agreement, partly because it was thought that LaDonna would be able to earn approximately $21,000 per year working in the Virginia area. The party's final divorce decree that was entered in March of 2015 affirmed, ratified, and incorporated that mural settlement agreement and its support award of $2,800 per month in the decree. And the – right, like, about two weeks or so before, right around that time, LaDonna filed a notice advising Toland that she would be moving to Galesburg in April. So in Virginia, the – when the decree was entered, it basically made the spousal award from the mural settlement agreement an award of the court. And so at that time, on March 6th, that $2,800 became an award of the court. It was known, it was part of the record, and at trial Toland did not dispute that these filings had been made, that LaDonna had final intent to move. So – Was there any contingency in the agreement that required her to remain in the area in order to receive spousal support? No. No, there was nothing in there. It basically has what was discussed earlier, cohabitation, death of other party, remarriage, and then – Relocation and frugality on her part, not required? Not required, not required. So in – just to kind of give you an idea of where the parties stand, or at least where they stood at the time of the May 31st hearing in the trial court, LaDonna was receiving between the maintenance and the pension plan about $53,000 annually, and Toland was receiving about $194,000 annually. With regard to the Daly case that's cited by opposing counsel, under Virginia law, where, like the case I've got here, the parties entered into a marital sodom agreement, and that agreement did not expressly address what impact the payer's spouse retirement has on maintenance. The mere fact that a payer's spouse is retired and that the payee's spouse has begun to receive pension income in addition to maintenance does not mean that a material change in circumstance has occurred that warrants some downward modification. The Daly v. Daly case that's been cited by Toland does not support his position that a payer's spouse retirement combined with payee's spouse's receipt of that pension income in addition to maintenance automatically constitutes a material change in circumstance. To the contrary, the Daly court held that the parties' marital sodom agreement, which did not expressly address what impact the payer's spouse's retirement had on maintenance, did not preclude the payer's spouse from seeking modification. That's what Daly held. In that case, the parties had stipulated that a material change in circumstance had occurred, and the court found that the matter should be remanded for the trial court to determine whether the stipulated change warranted a modification. And Toland cites no other case law in support of his position that retirement – his retirement and Toland's – I apologize. His retirement and LaDonna's receipt of pension income automatically constitute a material change in circumstance. Even if this Court were to accept Toland's take on the trial court ruling and determine that the trial court should have expressly found that Toland's retirement and LaDonna's receipt of pension income constituted a material change in circumstance, that would not necessitate a reversal or remand of the case. It's basically harmless error because there's two prongs, as opposing counsel recognized, and the trial court here has already determined that neither LaDonna's receipt of the retirement income nor Toland's retirement and the near doubling of his income as a result warrant a downward adjustment. The bottom line is under Virginia case law, modification of spousal support is only warranted by change in circumstances of the parties when the change bears upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay the maintenance. And the crucial question is the ability of the supporting spouse to pay. And that's, again, the Driscoll v. Hunter case, which is much like the case here. And that's, what's that? It says or. The financial needs of the dependent spouse or the supporting spouse to pay. Yes. That was your question. I'm sorry. I didn't quite hear you. Here there's no question that Toland's retirement has improved his financial situation and that he is able to pay LaDonna's maintenance. And thus Toland's retirement was not a change in circumstance that warrants a downward modification of support. With regard to, with regard to, and I'm going to go into that a little bit more in just a second, but with regard to LaDonna's needs, Toland did not present sufficient evidence at the trial level to show that her needs had been reduced in some way from what they were in Virginia. I believe that what the trial court found was that, yes, there may be a difference, but the extent to which that difference affected LaDonna's actual needs was not proven. It was Toland's burden to prove that the needs of LaDonna had changed in some way in order for that to be a material change. But with the or, you don't have to show that at all, right? What's that? With the or, you don't have to show that at all. Correct. Correct. In this case, neither of those things have happened. But, yeah, with the or, you don't have to show that at all. Furthermore, because of the timing of everything, the move could not be a material change of circumstance because, according to the timeline of when things happened, the parties and the courts expressly found that the move of LaDonna from the Washington, D.C., Virginia area to Illinois was contemplated by the parties at the time that the decree ratifying the $2,800 support award was entered. Thank you. Much has been made about this additional income source, the pension, being a windfall. But I think that's a misnomer for a couple of different reasons, one of which is that first, you don't even get to that spot. You don't even get to that spot in the Virginia code. The court doesn't even consider the factors that it should weigh in determining whether to reduce a husband's vassal support obligation if it hasn't previously determined that a material change in circumstance has occurred that warrants a modification. So it doesn't even get there. But if the judge and the trial court, I think, expressly mentioned in his letter opinion that the, and I just want to note this, the amount that she is currently receiving from the pension is roughly about the same as the amount it was anticipated that she might make in Virginia if she were to work out in that area. Counselors, two minutes. Also, it's simply incorrect that Virginia maintenance awards are only allowed up to the level of a payee's spouse's living expenses. To the contrary, under Virginia law, the purpose of spousal support is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse is accustomed during the marriage, balanced against the other spouse's ability to pay. So it's not simply a minimal sustenance amount. It takes into account the standard of living established during the marriage, which was fairly high. There is some testimony in the trial court that they traveled from base to base and basically a large house was provided for them as part of benefits to the family. So the house that she's in right now is probably much smaller than those houses. Historically, LaDonna has had no income or wages other than a few hours here or there. She spent her adult life as a stay-at-home wife and mother. Based upon her aging experience, any employment obtained by her now would be at or near minimum wage. She relies entirely on the maintenance of $2,800 and a proportionate share of the retirement income, giving her about the $50,000, $53,000. Tolan, in contrast, his salary has nearly doubled, increasing from about $102,000 to about $194,000. So given the gross disparity, it just doesn't make sense to, under any circumstances, to support a downward modification under the facts that we've got here. Since Tolan has failed to prove, as required by Virginia law, that a material change in circumstances has occurred since the entry of the party's divorce decree on March 6, 2015, that warranted a downward modification of spousal support, this Court should And in addition, LaDonna respectfully requests this Court order Tolan to pay attorney's fees and costs incurred in defending against this appeal, as allowed by Virginia case law specifically, Miller v. Cox, as cited in my brief. Thank you, Your Honor. Any questions? Thank you, Ms. Glass. Ms. Glass, will you rebuttal? Yes, thank you. I looked up the marital settlement agreement language on the spousal support, and just to clarify that language, it is spousal support shall permanently cease if LaDonna were to be remarried, cohabitate for more than a year, or if either of them passed. And then the second sentence, or the sentence immediately following it, the spousal support award set forth herein shall be fully modifiable pursuant to Virginia law. So that's how the parties get to then looking at the case law, the two prongs on the modification portion. So I just wanted to clarify that one point. I'm glad that opposing counsel brought up the Driscoll case that they cite to in their brief. So the Driscoll case is definitely a different set of circumstances. In that case, there was no new money coming into the wife. She was not receiving any additional payments. The husband was just seeking to reduce his spousal support amount. He was claiming, I think in that case about retirement, you know, that his income had decreased, and so he was trying to modify it downward, but her situation had not changed. And that is very different than the situation we have on our hands, where LaDonna's financial situation is the only reason that we're standing here. That is the, her financial situation is the material change at hand that warrants the modification and warrants it downward. So Driscoll says, Justice McVeigh pointed out the or. It's financial needs of the payee, financial needs of LaDonna, or Toland's ability to pay. For one, Driscoll never says that the second or is more important, that Toland's ability to pay. There's nothing in that case that says that one of those is more important than the other. It's an or. And the first one has been that. LaDonna's financial needs have, in fact, changed. She has $21,000 extra dollars that she's getting every year. She doesn't need the support to be, the maintenance to be at the level that it once was. Let me ask you a question. What was the amount of the pension that she gets monthly? Monthly, $1,800, I believe. And what is she putting away? $1,500. So the maintenance that she's receiving isn't supporting her lifestyle. She's dipping into that extra $300. So we wouldn't, I would be fine if it wasn't terminated, the spousal maintenance terminated, but reduced. So if she's over $300. So she can't have savings. She's saving $1,500 a month right now, $16,000 a year. So certain. When the two of these were married, they saved at a rate of about $19,000 a year. And if we are to leave people in the same circumstances they had when they enjoyed during the marriage, why shouldn't she be able, if she chooses to scrimp and save, be able to put some of that aside? Especially given the fact that they did this when they were married. I wouldn't say that we wouldn't want her to scrimp and save. She's not scrimping and saving. She is living, she is not compromising on anything. She is not working. She's at home bringing in $53,000 in Galesburg, Illinois. She's not scrimping. She's not living somewhere with a roommate. She is living the lifestyle that she very comfortably has chosen. And if she was saving a safety net aside of a few hundred dollars every month, that would be, we would not be standing here today. Was that the size of the safety net they maintained during the marriage? A few hundred dollars a month? It sounded like $19,000 for a couple, so I guess you could say, what, $8,500 for her portion of it? For the math? The husband had withdrawn $30,000 prior to the division. You'd have to add that back in. But the question is, is that if she's not living differently and her expenses, although the trial court didn't make a finding about the cost of living being extremely lower in Galesburg as opposed to the D.C. area, and I don't think there was any, I don't see any evidence of what the cost of living or the poverty rate is either in D.C. or in Illinois, but to the extent that she didn't work when she was married, she had an employment study done during the divorce, and as a result of that, there was no order by the court or provision in the agreement that she seek either education or employment. So I don't know how we get to the fact that now she should be expected to do that, unless there's some case or something that says absent some agreement or order of the court that going back for a modification when the husband can clearly afford to continue paying, that we should be considering that. And I think that that's a great point about the employment, and like I said before, I'm not even necessarily saying that she has to. She didn't work all these years. When they were doing the marital settlement agreement, they anticipated that she would at least go out and get some form of employment, but does she have to? I mean, no, I don't have any case law that says she has to go out and work. My point in bringing up the fact that she doesn't work and that she lives in Galesburg and her rent is now half of what it was in D.C. is simply to illustrate that she is living comfortably where she is right now. She is not having to go outside of the home to work. She has her expenses way more than covered. That's the whole point. She is living the lifestyle that she is choosing to live, and she's saving $16,000 a year because now she has this new $21,000 pension income coming into her. And so, you know, spousal maintenance being modified simply to correct for the windfall that the pension payment now creates. So moving it down just some so that she has $1,500 extra a month. Percentage-wise, it's a huge savings plan for her. She is saving $16,000 a year. The pension is $21,000 that she's getting extra. She's living within the spousal support means, which is great as it should be. That's what it's there for. He would not be standing here today but for now she's getting $21,000 extra. Does she expect every penny of that $16,000 she put in the bank with her lifestyle to be more lavish than the lifestyle she had during the marriage? Yes, I believe so. Any further questions? I can clarify some of the other points that both the Council made or answer any other questions. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.